828 P.2d 301

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Clinton Lloyd HUSTON, Defendant–
Appellant.**

**No. 17951.**

Supreme Court of Idaho,
Boise, April 1991 Term.

Feb. 24, 1992.

**739**

Carol L. Shephard, Ketchum, for defendant-appellant.

Jim Jones, Atty. Gen., and James E. Leuenberger, Deputy Atty. Gen., Boise, for plaintiff-respondent. James E. Leuenberger argued, Boise.

## ON REHEARING

BISTLINE, Justice.

The facts of the case are as follows: Clinton Huston and his wife Vicki Huston were in the midst of divorce proceedings instituted by Vicki. On May 18, 1988, the Hustons agreed to talk to each other. Clinton's car was not working, so Vicki picked him up and they drove to a canyon outside of Bellevue. They got out of the car and walked some distance up the canyon through underbrush and branches, then sat down and continued to talk. The discussion, which centered on the custody of their son, grew heated. Vicki made a remark which angered Clinton, and he kicked her in the head. The wound began to bleed heavily; Vicki screamed at Clinton that she needed to go to the hospital. Clinton attempted to help Vicki traverse the terrain to get to the car. Near the bottom of the gully Vicki fell on some downed branches. When they reached the car, Vicki sat in the passenger seat, and Clinton drove her to the hospital.

The laceration on Vicki's head required stitches. In addition she had some scratches and abrasions on her arms. Vicki told hospital personnel that she had fallen and hit her head on a rock. No hospitalization was required, and Vicki was released within half an hour. Clinton drove her home and stayed for about an hour to play with his son. Vicki then drove Clinton to his sister's home.

On May 19, 1988, at the urging of an acquaintance, Vicki went to the Blaine County prosecutor concerning the incident of May 18. Based on her complaint and some independent investigation, a warrant was issued for Clinton's arrest. The initial complaint charged Clinton with aggravated assault with a deadly weapon, to wit, a rifle or shotgun, but did not charge battery and did not mention a boot. The complaint was later amended to read "shotgun or rifle," and a second count alleging battery was added.

On the day of trial, Clinton pleaded guilty to misdemeanor battery admitting he kicked Vicki with his booted foot but denying the allegations of the prosecution that the battery had involved striking Vicki with the butt of a gun. The trial on the felony charges was to go on as scheduled. Over defense objection, the information was amended immediately before trial to read "a shotgun or rifle or a boot."

Trial lasted two and a half days. The jury returned a verdict of guilty to the charge of aggravated assault with the use of a deadly weapon. A special interrogatory which the court submitted to the jury asked it to decide if assault was committed with a firearm or a boot. The jury answered that "a boot" was the weapon.

Clinton was sentenced to a total of three years determinate and three years indeterminate, for the aggravated assault with a deadly weapon conviction. No additional sentence was imposed for the battery. Clinton first challenges the felony conviction on the ground that it was precluded by I.C. § 18–301.

Idaho Code § 18–301 provides:

**18–301. Acts punishable in different ways—Double jeopardy.**—An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

■ The State asserts that the convictions should stand because Clinton is barred from raising the issue on appeal under I.C.R. 12(b)(6). We agree. That rule provides:

Any defense objection or request which is capable of determination without trial of the general issue may be raised before the trial by motion. The following must be raised prior to trial:

(6) Motion to dismiss based upon former jeopardy.

Clinton did not move to dismiss on former jeopardy grounds until after the second trial was completed. His failure to make a timely motion to dismiss bars him from asserting that theory on appeal.

■ The next argument submitted by Clinton is that the boot he was wearing was not a deadly weapon. Clinton was charged with a violation of I.C. § 18–905(a) commonly known as aggravated assault with a deadly weapon. The district court gave the following instruction as to the term deadly weapon:

A '... deadly weapon' is any object, instrument, or weapon which is used in such a manner as to capable of producing, and likely to produce, death or great bodily injury.... If it appears that the instrumentality is capable of being used in a deadly or dangerous manner and it can be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, its character as a deadly weapon may be thus established, at least for purposes of that occasion.

Clinton does not contend that the jury was incorrectly instructed. He contends that

his boot was not a deadly weapon under the instruction as given.

Turning now to the facts of this case, we must determine whether the evidence about the boot and manner in which it was used in this case could convince any rational trier of fact beyond a reasonable doubt that the boot was a deadly weapon as defined above. *See Jackson v. Virginia,* 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

During the trial, Clinton frankly admitted he kicked Vicki one time in the head:

Q. It's your testimony that you kicked your wife in the head?

A. Yes, it is.

Q. How hard did you kick her?

A. I don't know how hard I kicked her. I kicked her hard enough to cut her head.

Q. Kind of what?

A. To cut her head. I did kick her hard enough to cut her head. How hard, I do not know.

Q. How close to you were from Vicki?

A. Probably one step from her, half step from her. I don't know.

. . . .

Q. Okay. How did you kick her?

A. I think I took a step and I kicked her like ... I believe like that. It happened fast. I do not remember.

Q. Did you kick her with what part of your shoe, do you know?

A. No, I do not. I do not know what part of my boot hit her.

Q. You're on basically even ground?

A. Yes. Approximately.

Q. She got kicked in the left side. So I'll move ... Okay, put your boot up. So you don't know if it was with this, going like this?

A. No, I don't.

Q. Or you don't know ... And I don't want to knock you over. You don't know if it was going up like this?

A. No.

Q. Okay, but—

A. I do not know.

Q. Do not know?

A. No.

Q. Could have been the heel?

A. Could have been.

Q. Or the toe?

A. Yes.

Q. What type of boots were you wearing?

A. These.

Q. Those very boots?

A. Yes.

Q. Hard-soled boots?

A. Sort of, yes.

Q. They're hiking boots?

A. Yes. Vibram soles.

Q. Vibram soles. You don't know where you kicked her in the boot?

A. No.

Thus, the evidence shows that Clinton kicked Vicki one time in the head with his hiking boot. The kick resulted in a cut on Vicki's head which required stitches to close. Under the instructions as given, a rational trier of fact could have found beyond a reasonable doubt that the boot was of the type and used in such a manner that was likely to produce death or great bodily injury.

The defendant's conviction of aggravated assault with a deadly weapon is affirmed.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ., concur.